**BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES**
**WASHINGTON, D.C.**

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR:**

xxxxxxxxxxxx
**Southeast, Washington, D.C.**

**A 2004 Cadillac, SRX with DC tags CK5875**

**One James Hyland Brown, DOB xxxxxxxx, SSN#xxx-xx-xxxx, MPD PDID#xxxxxx**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

_____

1. This affidavit is submitted in support of an application of a search warrant for the following:

   a. The residence known as xxxxxxxxxxxx, S.E., Washington, D.C.,
   b. a 2004 Cadillac, SRX, Black in color, with DC tags CK5875 and
   c. one James Hyland Brown with a DOB of xxxxxxxx

2. This affidavit is submitted in support of an application for a search warrant for the entire premises known as xxxxxxxxxxxx, Xxxxxxxxxxxx, Washington, D.C. to include all areas bounded by and including its curtilage.  The residence is located on the south side of the xxxxxxxxxxxxxxxxxx, Washington D.C.  The residence marked "xxx" Xxxxxxxxx is east of xxxxxxxxxx and to the west of xxxxxxxxxx and north of Virginia Avenue, in the Xxxxxxxxxxxx section of Washington, D.C. The residence numbered "xxx" Xxxxxxxxx, Xxxxxxxxxxxx, is situated to the west of the residence numbered "xxx" and to the east of the residence numbered "xxx".  The residence marked "xxx" Xxxxxxxxx is located directly above the residence marked "xxxx". The residence known as xxxxxxxxxxxx, Xxxxxxxxxxxx, is more particularly described as being located in a three-story, red brick, attached duplex row house, with beige trim. The numbers "xxx" appear in gold on a window that is directly above the front door to the residence marked "xxx". There is a beige colored overhang above the porch. The four panel front door to the residence is green in color, and has a brass mail slot located in the middle of the door. There is a black door handle on the left side of the door. Directly above the black door handle is a black colored deadbolt lock. The front porch and steps are made of wrought iron and are black in color.

   Your affiant, Frank Oliver, being duly sworn deposes and states as follows:

1

**INTRODUCTION**

3. The facts contained in this affidavit are set forth to support probable cause for this application. It is not intended to include each and every fact and matter observed by your affiant or known to the government.

4. Your affiant in this matter is Special Agent Frank Oliver, of the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF). I am currently assigned to the Washington Area High Intensity Drug Task Force (HIDTA). I have been a Special Agent with ATF for approximately 6 years. Prior to becoming a Special Agent with the ATF, your affiant was a Narcotics Investigator/ Officer with the United States Park Police for approximately 10 years. Your affiant has conducted numerous narcotic trafficking and gang related investigations. Your affiant has participated in the preparation, presentation an execution of numerous search and arrest warrants, which have resulted in the recovery of narcotics, weapons and documentary evidence indicative of narcotics and firearm trafficking.

5. During the course of your affiant's training, professional experience and participation in the investigation of organized narcotics traffickers, I have gained personal knowledge that participants in drug trafficking and other violent criminal activity often possess and maintain weapons and ammunition. Weapons are often stored in the subject's residences for their protection and for the protection of their illegal narcotics and the assets generated from the sales of the illegal narcotics. Firearms are generally kept in secure locations to protect the items from theft and discovery by law enforcement authorities, thus reducing their exposure to criminal liability. In your affiant's experience, the recovery of weapons during the execution of search warrants is usually accompanied by the recovery of additional ammunition, magazines, bulletproof vests and documentary evidence indicative of ownership and possession of firearms

6. Your affiant has learned from his experience in narcotics enforcement that the execution of a narcotics search warrant often reveals the presence of other persons other than the residents on the premises and that such persons include but are not limited to, persons assisting in the distribution of the controlled substance, potential buyers of the controlled substance, and drug users and that it is common to find controlled substances and drug related paraphernalia on these persons. Experience has taught your affiant that conveyances, particularly vehicles, both stationary and mobile, are used to facilitate on going criminal drug enterprises. Based on your affiant's experience in narcotics and firearms related investigations, people who sell drugs transport and store drugs in their vehicles. Your affiant has learned that mobile conveyances are commonly used to transport narcotics, firearms and other contraband. Furthermore, your affiant has knowledge that vehicles used by drug traffickers are sometimes physically and

mechanically altered to manufacture secret compartments. The purpose of this is to conceal items of contraband; specifically controlled substances, firearms, and U.S. currency derived from their ongoing criminal enterprises from law enforcement authorities, thus reducing their chance of incurring serious criminal liability.

7. The facts and information set forth in this affidavit are based upon your affiant's personal knowledge, training, observations, experience and investigation and observations of other Investigators involved in this investigation. All observations that were not personally made by your affiant were related directly to your affiant by the persons who made such observations or who corroborated such information. Additionally, information was gathered through the use of a confidential reliable source, hereafter referred to as CI-1. CI-1 has provided your affiant, as well as other local law enforcement agencies with truthful information and proven reliable and credible on each and every occasion. Information CI-1 has provided your affiant has been independently corroborated by your affiant and members of other local law enforcement agencies and found to be true and accurate. CI-1 has supplied your affiant and other local law enforcement agencies with reliable information on at least six (6) separate occasions in the past that has led to the issuance of narcotic related search warrant(s), which have resulted in the seizure of various controlled substances and firearms. CI-1 has personally trafficked various types of controlled substances and is able to recognize various types of narcotics in their various forms and is familiar with the methods in which drug dealers conceal, package, and traffic their product for both wholesale and street level distribution. CI-1 has never been known to provide your affiant, members of this agency, or any other law enforcement entity with untruthful or unreliable information.

8. Based upon your affiant's training, experience and participation in narcotic related investigations, your affiant has personal knowledge that individuals who traffic in narcotics maintain books, records, receipts, notes, ledgers, safe deposit keys, along with other papers and documents relating to the transportation, ordering, purchase and distribution of controlled substances. Individuals who traffic in narcotics also maintain addresses, telephone books, electronic paging devices, portable telephones and other papers reflecting names, addresses, and/or telephone numbers of associates and co-conspirators, which are frequently kept at the same location as the controlled substances. Likewise, narcotics traffickers frequently carry firearms on their persons or keep firearms in their vehicles or houses in order to facilitate their drug trafficking activities and as a way to protect themselves and their product from rival drug organizations. Additionally, your affiant knows that these same individuals keep receipts, bank statements, money drafts, letters of credit, money orders and cashier checks, bank checks, currency counting machines and other items evidencing the obtaining, secreting, transfer, or concealment of assets in the form of U.S. currency and other financial

instruments. Your affiant knows that the aforementioned items are generally maintained in a secure area so that the narcotic trafficker can gain ready access to them and protect them from discovery by law enforcement authorities.

## SUMMARY OF INVESTIGATION

9. In February of 2006, CI-1 contacted your affiant in reference to a subject known to CI-1 as "FIST". CI-1 stated that it knew "FIST" to sell large quantities of cocaine in the Washington, D.C. area. CI-1 stated that "FIST'S" phone number was xxxxxxxxxxxxx. Through computers checks, "FIST" was identified as James Hyland Brown, a black male, with a date of birth of xxxxxxxx, FBI # xxxxxxxxxxxxx. A photo of James Hyland Brown was obtained by your affiant and shown to CI-1. CI-1 positively identified the photo James Hyland Brown as the subject known to it as "FIST".

10. Prince Georges County Police Detective Raphael Grant obtained a Prince Georges County Grand Jury Subpoena for subscriber information from the Sprint Nextel Corporation for the phone number xxxxxxxxxxxxx. The current subscriber information returned to James Brown, date of birth of xxxxxxxx, Social Security Number-xxxxxxxxxxxxx, of xxxxxxxxxxxx, Xxxxxxxxxxxx, Washington, D.C.

11. That your affiant conducted a criminal history check on James Hyland Brown, with a date of birth of xxxxxxxxxxxxxxxxx, which revealed the following charges:

   A. October 1992 – Metropolitan Police Department

   Carry a Pistol Without a License

   Uniform Controlled Substance Act – Cannabis – Possession With The Intent

   B. December 1992 – Metropolitan Police Department

   Carry a Pistol Without a License

   C. July 1993 – Metropolitan Police Department

   Uniformed Controlled Substance – Marijuana

   D. August 1993 – Metropolitan Police Department

   Uniform Controlled Substance Act – Distribution

E.  February 1994 – Metropolitan Police Department

    Possession With Intent Distribute – Cannabis

F.  May 1994 – Metropolitan Police Department

    Uniform Controlled Substance Act – Distribution

G.  May 1996 – Metropolitan Police Department

    Possession of Crack Cocaine

H.  October 1999 – Metropolitan Police Department

    Simple Assault

I)  May 2001 -   Metropolitan Police Department

    Possession Marijuana – Uniform Controlled Substance Act

    Distribution of Cannabis

    Possession With Intent to Distribute – Marijuana

J)  January 2003 – Metropolitan Police Department

    Distribution Marijuana

K)  February 2005 – Metropolitan Police Department

    Distribution Cocaine

L)  March 2005 – Metropolitan Police Department

    Possession With Intent to Distribute – Cocaine

    Possession Marijuana

12. Your affiant and other Law Enforcement Officers (LEO) met with CI-1 during a ten day period commencing March 1, 2006. At this time LEOs made a complete search of the CI-1's person and the CI-1's vehicle. The search showed that the CI-1 had no controlled dangerous substances or money on its person or in its vehicle. The CI-1 was then given a sum of pre-recorded United States Currency,

from the Bureau of Alcohol, Tobacco, Firearms & explosives, and was instructed to go to a pre-determined location in Prince George's County, Maryland, to purchase a quantity of cocaine from James Hyland Brown, with a date of birth of Xxxxxxxxxxxx.  CI-1, prior to going to the pre-determined location in Prince George's County, Maryland contacted James Hyland Brown to arrange the transaction. Surveillance was conducted at "xxx" Xxxxxxxxxx, Xxxxxxxxxxxx, Washington, D.C. prior to CI-1 meeting with James Hyland Brown. During this surveillance the **2004 Cadillac, SRX, bearing D.C. registration CK5875** was observed parked in the rear of "xxx" Xxxxxxxxxx, Xxxxxxxxxxxx, Washington, D.C. Once at the pre-determined location in Prince George's County, Maryland, CI-1 met with James Hyland Brown, who was driving a black **2004 Cadillac SRX, bearing District of Columbia registration CK5875.**  That the CI-1 got into the passenger seat of the black **2004 Cadillac SRX, bearing District of Columbia registration CK5875** with James Hyland Brown. After a brief period of time CI-1 exited the black **2004 Cadillac SRX, bearing District of Columbia registration CK5875,** and departed the area.  The CI-1 never left the sight of LEOs who were conducting surveillance of the pre-determined location. CI-1 then returned directly to LEOs at a predetermined location without stopping or coming into contact with any other person and without leaving the sight of LEOs. At this time CI-1 turned over a hard white substance to LEOs, and stated that it had exchanged the pre-recorded U.S. currency with James Hyland Brown, for a quantity of suspected cocaine while inside the black **2004 Cadillac SRX, bearing District of Columbia registration CK5875,** at the pre-determined location in Prince George's County, Maryland. A search of CI-1's person and the CI-1's vehicle showed that the CI-1 had no other controlled dangerous substances or money on its person or in its vehicle.

13. Your affiant performed a preliminary field test on the suspected Cocaine that CI-1 purchased from James Hyland Brown in Prince Georges County, Maryland using a Nark #4 test reagent for Cocaine. The results of this the test showed a positive reaction for Cocaine.

14. James Hyland Brown, who was driving the black Cadillac, SRX, bearing DC license plates CK5875, was followed from the area where he met CI-1 in Prince Georges County, Maryland by surveillance team members to the area of xxx Block of Xxxxxxxxxx, Xxxxxxxxxxxxx, Washington, D.C. A short time later the black Cadillac, SRX, bearing DC license plates CK5875 was observed in the rear of xxxxxxxxxxxx, SE, Washington, D.C.

15. Your affiant conducted a check of the District of Columbia Department of Motor Vehicle database. This computer check revealed the 2004 Cadillac, SRX, bearing DC license plate CK5875, registered owner was Latanya Jatrice Sullivan, with an address of xxxxxxxxxxxx, South East, Washington, DC.

16. Your affiant and other LEOs met with CI-1 within the last 96 hours. At this time LEOs made a complete search of the CI-1's person and the CI-1's vehicle. The search showed that the CI-1 had no controlled dangerous substances or money on its person or in its vehicle. The CI-1 was then given a sum of pre-recorded United States Currency, from the Bureau of Alcohol, Tobacco, Firearms and Explosives and was instructed to go to a pre-determined location Washington, D.C., to purchase a quantity of cocaine from James Hyland Brown, with a date of birth of Xxxxxxxxxxxx. CI-1, prior to going to the pre-determined location in Washington, D.C. contacted James Hyland Brown, to arrange the transaction. Once at the pre-determined location in Washington, D.C., CI-1 met with James Hyland Brown who was driving the black **2004 Cadillac SRX, bearing District of Columbia registration CK5875.** A short time later CI-1 departed the area and was followed to a predetermined location. CI-1 was under constant surveillance and returned directly to LEOs at this predetermined location without stopping or coming into contact with any other person and without leaving the sight of LEOs. At the predetermined location CI-1 turned over a hard white substance to LEOs and stated that it had exchanged the pre-recorded U.S. currency with James Hyland Brown, for a quantity of suspected cocaine. At the pre-determined location a search of CI-1's person and the CI-1's vehicle showed that the CI-1 had no other controlled dangerous substances or money on its person or in its vehicle.

17. Your affiant performed a preliminary field test on the suspected Cocaine that CI-1 purchased from James Hyland Brown in Washington, D.C. using a Nark #4 test reagent for Cocaine. The results of this the test showed a positive reaction for Cocaine.

18. Following the transaction with CI-1 in Washington, D.C., James Hyland Brown, who was driving the black Cadillac, SRX, bearing DC license plates CK5875, was followed to the area of xxx Block of Xxxxxxxxxx, Xxxxxxxxxxxxx, Washington, D.C. Once in the xxx Block of Xxxxxxxxx, Xxxxxxxxxxxxx, James Hyland Brown parked the Black Cadillac, SRX, bearing DC license plates CK5875 in the rear of xxxxxxxxxxxx, SE, Washington, D.C. and exited the vehicle. James Hyland Brown then walked to and entered the front entrance of xxxxxxxxxxxx, Xxxxxxxxxxxxx, Washington, D.C.

19. During the last two weeks, surveillance has been conducted at xxxxxxxxxxxx, Xxxxxxxxxxxxx, Washington, D.C. on numerous occasions by LEOs. During these surveillance periods, James Hyland Brown, with a date of birth of xxxxxxxxxxxxxx, has been observed in the area, and entering the residence known as xxxxxxxxxxxx, Xxxxxxxxxxxxx on numerous occasions. James

7

    Hyland Brown has been observed driving the **black Cadillac, SRX, bearing DC license plates CK5875** on numerous occasions. **The black Cadillac, SRX, bearing DC license plates CK5875** has been observed continually parked in the rear of or in the xxx Block of xxxxxxx, Xxxxxxxxxxxxx, Washington, D.C. (front) by LEOs on a daily basis.

20. In summary, based on the information contained herein, your affiant believes that James Hyland Brown is utilizing **xxxxxxxxxxxx, Xxxxxxxxxxxxx, Washington, D.C.**, as a base to conduct and facilitate an illegal drug operation involving the controlled substance Cocaine and has done so on a continuous basis for at least the past two weeks. Furthermore, based on the aforementioned investigation, your affiant's training, education, personal observations and experience in narcotics suppression, your affiant has probable cause to believe that James Hyland Brown is utilizing this same residence to secrete and maintain evidence, instrumentalities and fruits of the offense of Distribution of Cocaine, in violation of Title 21, United States Code, Section 841 (a)(1) . Your affiant believes this type of evidence is located at **xxxxxxxxxxxx, Xxxxxxxxxxxxx, Washington, D.C**., because it is reasonable to expect to find this kind of evidence inside of the residence due to such a productive drug operation. Based on the foregoing, your affiant believes there is probable cause that the premises known as xxxxxxxxxxxx, Xxxxxxxxxxxxx, Washington, D.C., contains property constituting evidence of the commission of the offense of Distribution of Cocaine, contraband, fruits and instrumentalities designed or intended for use, which is and has been used as means of committing the above referenced offense. Accordingly, your affiant respectfully requests search warrants be issued for **xxxxxxxxxxxx, Xxxxxxxxxxxxx, Washington, D.C**., the person known as **James Hyland Brown, and the Cadillac, SRX, bearing DC license plates CK5875**, authorizing the seizure of any controlled substances, packaging and cutting materials used to dilute "raw" Cocaine, monies derived from the illegal sales of Cocaine, pre-recorded U.S. Government funds, documents such as ledgers, phone books, address books, receipts, canceled checks, money orders, vehicle titles, photographs and other paperwork denoting narcotic sales and/or receipts of narcotic transactions as well as other evidence and contraband associated with narcotic trafficking such as firearms, ammunition, cellular phones and digital paging devices.

_____
Frank L. Oliver
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives


Sworn to and subscribed before me this _____ day of March, 2006.

8

_____
United States Magistrate Judge
District of Columbia